All right, here ye, here ye, here ye. This Honorable Appellate Court of the 2nd District is back in session pursuant to adjournment. Governor Susan Faye Hutchinson presiding. Please be seated. Your Honor, this is the first case of the afternoon. Call 212-925. Dismuke v. Illinois v. Antoine Dismuke. On behalf of the Avalanche, Mrs. Mary Beth Burns. On behalf of the athlete, Mrs. Kim Dewitt. And as I have said four other times before, but each record is new, Justice Zinoff is the third member of our panel. She became ill within the last 24 hours. She is not able to be with us today, but she will listen to the arguments when they are available online. And she has submitted some questions that we can also ask here today. So she will be and is very involved in this appeal as well as the others. So if we are ready to proceed, Ms. Burns. Good afternoon, Your Honors. Good afternoon. My name is Mary Beth Burns and I represent the people of the state of Illinois. We come before you this morning, this afternoon, to respectfully ask this court to reverse the trial court's judgment dismissing the weapons-related charges against the defendant. The trial court had dismissed them based on compulsory rejoinder and speeding trial. And we noted during the briefing of this case that he had relied on the first district appellate court's opinion in Hunter. The Illinois Supreme Court has subsequently affirmed that decision and defense counsel's motion to supplement the, to cite additional authority has been granted by this court. Initially, I am in a position where I have to apologize to this court and the counsel on two points. The first one is counsel noted in her brief as appellee that I had cited this court's decision in People v. Riley. Riley turns out is an unpublished order. This apparently is a matter of teaching an old dog new tricks because I looked at the citation and it did not have a U. And I'm like, oh, this is fine. And when I read her brief, I'm like, really? That couldn't have happened. And I pulled my copy and it still doesn't have a U on it. It does, however, say this is an unpublished order under Supreme Court Rule 23. So I sincerely apologize to this court and to counsel.  Not a problem. That is going to be a problem where you get them on a regular basis and you think it's authority. Well, it is basically to give you some idea of what we're thinking. And basically you were thinking that Hunter was correct. The other apology is more significant and more substantive. I found out while we were moving the case yesterday in my office that I had failed to point out that the weapon that was discussed in the John Doe warrant is not necessarily the weapon that was found. The John Doe warrant talks about a black semi-automatic and what was found was a chrome weapon, chrome gun. This comes out in the defendant's motion to disclose a confidential informant, which appears in the record as C-163. And his discussion of the difference in the guns is at C-166. But the gun that was found is the gun that is the basis of the charge. Yes, Your Honor. And again, I apologize for not pointing that out. Getting to the substance, again, we have to acknowledge that Hunter was decided against us. But I think that Hunter is distinguishable. Hunter talks about the legal fiction that possession charges will be viewed as being part of a closed container, that all of the items that are found within a search or found at the point of an arrest or whatever will be part of this closed container. However, in the situation in this case, you had nine people in various places in this residence. To the extent that we're supposed to be looking at this particular analogy, it simply can't work when you've got that many people. To take the analogy to its logical conclusion, the container is not closed. The container is pretty much open here. Nobody has any idea where any of these items came from. Everybody was apparently arrested that night on the cannabis charges. Ultimately, the defendant admitted that some of the cannabis was, in fact, his, and he was charged with a misdemeanor. However, because you had nine people at the residence and no one acknowledged any knowledge or certainly tied to the gun, that charge simply could not be or no charges could be entered against anyone until all of the fingerprint analysis was completed. With all due respect, I have heard this argument before, and I view it to be a reasonable one. But I have found no authority that says when you execute a search warrant and you find contraband, you must issue an arrest warrant that night. You can wait to issue that arrest warrant until all of your, we'll use the phrase, ducks are in a row. Again, with all due respect, the state will often do this. They will issue the search warrant. The search warrant is executed. We got something. And so we charge. They could have waited. And why? I didn't see anything in this particular record that said why they didn't wait, other than they had a burden handed and they were going to do something about it. So why can't they wait? You know, and I don't know the answer to that question. I think realistically, when you're executing a warrant on someone and you're looking for a weapon, the belief, I think, in this particular case, and I can't talk to the broader world of how these cases are investigated and tried, but in this particular case, where they had somebody who they already knew had previous felonies, or I presume they already knew that, I think the feeling was that they wanted to get whatever charge, in fact, could be filed at that point. I understand the concept of why not wait. And I think it works probably better in Hunter than here, because in Hunter, there were no misdemeanor charges in Hunter. They were all felonies. And in Hunter, you only had the one person going in and out of the vestibule. So it may be an easier thing to say we'll hold off on this because, in fact, everything's together, and to the extent that we're going to have the closed-box analogy, it works here, because my reading of Hunter about decisions is that the defendant was the one who kept going in and out of the vestibule, that nobody else was seen in the vestibule. And so the question why not wait, perhaps, is more fitting there. Here, where you have a known charge for a misdemeanor amount of marijuana and an unknown where you've got nine possible suspects for the handgun, perhaps the feeling is you don't know how the handgun's going to shake out. You don't know if it's going to be this defendant. You do know the marijuana is this defendant because he omitted it. But not until after he was arrested. No, right. Didn't everybody get arrested and then he said, oh, by the way, yeah, some of that is mine. Right. But I guess, I mean, it's a philosophical issue that you probably have no control over, but it just seems to me that where there are confidential informants and they don't want to go to trial on matters, they will wait as long as they have to wait until that confidential informant is done with his or her assignment and nothing happens, you know, those prosecutions go forward. Here, the more important issue probably in everybody's mind was that gun. Yes. They took it. They didn't have to leave it there. They were entitled to take it and inventory it. Correct. They didn't have to charge people as they walked out that door. Now, it's not likely most police are going to go see you later if they walk out the door, but I think this, you know, is something that has to be considered, especially in light of a case, Life Hunter, that seems to say part of the same search warrant, part of the same, they're looking for something, they want something, they find it, but they have a glitch. There are 10 people there. Well, you know, and I think there are a couple of other things that fit into this. In the defendant's brief, he suggests there was probable cause to charge and so it should have been charged up front. And I guess my concern is you get into a lot of issues as to appropriate charging. Having probable cause is the threshold, but a whole lot of other considerations go into it, and I don't think ethically prosecutors can charge something without having some reasonable belief, not only that they have probable cause, but they're going to, in fact, have enough evidence to, in fact. We're not saying to abandon all your ethical considerations.  I mean, this is saying, you know, if you're going to arrest somebody for something on that night, and the contrabanded issue is from a search warrant where something else is also found, in the same place, same time, same search, you've got 160 days. You just don't have an infinite amount of time. If you could maybe hone your remarks to what happened in the next 160 days that prevented the state from bringing those charges on a more timely basis. I mean, I'm with you that, okay, that night I'm not going to charge nine people with this gun, but I don't have forever to decide if I'm going to charge and who I'm going to charge. No, but I think from a prosecutor's point of view, I don't have forever, but I may not feel tied to the 160 days in the misdemeanor when I am, in fact, looking at a statute of limitations of three years. You know, I think that my belief is that I have three years to charge this, and I'm not going to go forward until I actually know who the gun belonged to. It's a reasonable argument prior to Hunter. I mean, but now I think Hunter pretty much says if it is found at the same place, same time, during the same search, that possession began to occur at that time. So you have a basis to charge. But I don't think that Hunter could be read to remove the knowledge requirement. How could they not know that there was a gun there? They did know there was a gun there. They didn't know who it belonged to. They did know there was a gun there. They found the gun under the couch. The gun doesn't match the gun they're looking for in the warrant, which is likely irrelevant, because it's the defendant's residence. But it's the defendant's residence, and there's eight or nine other people there. Somebody could have come in, kicked it under the couch in hopes nobody would see it when they heard the cops at the door. Could have been the defendant just having it there because he knew there would be a lot of people in his house in the same spots where he has various drugs and perhaps may have thought that he would have to use it against somebody in his house. I'm sure he's not contemplating using it against an officer. But he's in a residence with an amount of drugs, not like apparently a huge amount. He certainly didn't admit to a huge amount. But it could be his weapon. It could be somebody else's weapon because, again, you've got a group of people in the house. You can't charge him and you can't charge nine other people with a gun when nobody knows whose it is. It's one thing to charge somebody with a misdemeanor amount of marijuana, which, and again, these people were arrested and I'm sure their charges are going the next morning. It's another thing to charge somebody with a significant felony without being able to say, not only do I have probable cause, but in fact I have reason to believe that I can prove this within the speedy trial term. You're not meaning to tell me that it's okay to charge a misdemeanor, kind of I think so, but not a felony? Certainly not. But what I'm saying is that when they arrested nine people because they were all in the presence of a group of marijuana and cocaine and various other things, that was what they used to arrest them. I'm sure that those people, charges were all dropped within moments, if not, well, overnight, say, probably, because this was at some point, because they were all arrested because they were in proximity to the drugs and again, at that point, they can sort out who the drugs belong to and what everyone else has to do. But again, it's one thing to arrest a bunch of people who are all in the same proximity as a whole bunch of drugs. It's another thing to charge someone with what are very significant weapons charges. This defendant was charged with armed habitual criminal. You certainly couldn't charge an offense like that without having had that fingerprint on that gun. Well, they got a fingerprint of some nature on November 25th, and they clearly had, and this search warrant is executed on October 5th. So now we're within a two-month period, not even two months. We have a print that's lifted. There apparently is some confusion maybe between telling the officer, the investigating officer that we had a print until several months later. Yes. And I am sure that we have defendant's fingerprints on file based upon the charge that they've lodged against him. Yes, because that's what they sent the comparison. They sent his and the other people who were outbooked the same night. To get an arrest warrant, though, you don't have to prove it yet. You can eyeball it. Why didn't they do an eyeball? Well, the first question is, why didn't the evidence technician talk to the lead detective? And secondly, why wasn't there some in-house police work? This looks like his fingerprint. Let's charge him now. You know, you're asking questions that this record simply doesn't answer. And I understand the concern with, did the police drop the ball? Was something else happening? But the record simply does not answer this. The number of times that the motion to dismiss was litigated, which it was litigated multiple, multiple times, but it was never litigated with an evidentiary hearing. Because the first time it was litigated, the defense counsel said no, that he wanted not to have an evidentiary hearing, and apparently he was looking at it as a matter of law. And so, as I pointed out in my statement of facts, everything is based on pleadings. There was never any development factually of what occurred with the police officers, what occurred with the detectives. I think under Section 3-3B, there's also no discussion of what went on between the detectives and the state's attorney's office on this, because 3-3B talks about the proper prosecuting authority. Other than a misdemeanor assistant who has a marijuana charge, I have no idea from this record what the interplay was between the detectives on the weapon and the felony assistant in the state's attorney's office, who they would have dealt with. And so I have no idea at what point, prior to the lab actually bringing back the fingerprints, there would have been any way for anyone to know who was a proper prosecuting authority. Is that the state's attorney of Kane County? I'm sorry? It's the state's attorney of Kane County. Yes, Your Honor. Are you asking us to delineate and say that if you're not aware of the specific individual assistant assigned to a case, that you've done your job? No, Your Honor. I mean, the prosecuting authority is the state's attorney of Kane County. Right, and that's not the point that I'm making. I think the point that I'm making is the record simply doesn't show why there was a delay or if the state's attorney of Kane County was aware that there was, in fact, a weapon that could be charged once lab report was returned. And again, the record simply doesn't say what occurred during that 10-month period. If Your Honor has any more questions. Let me just ask one other one relating to actual or constructive possession. Does Hunter make any difference or point out any difference in the two? As to Hunter, I think my recollection of Hunter is that the state had conceded and that everyone had agreed that the possession was constructive. Here, the state's position has been that as to the marijuana, it was actual possession because the defendant, in fact, admitted that it was his. And so in that respect, Hunter would be perhaps less compelling. However, I think that the problem with Hunter, the Hunter speaks specifically to constructive possession. My sense is that its overall rationale would look to all possessions. I could be wrong on that, but that would be my read of Hunter. Thank you, Your Honors. Thank you. Ms. DeWitt. Good afternoon, Your Honors. May it please the Court. Counsel. With all due respect, this case is controlled by Hunter. First of all, it's the state's duty to furnish a complete record for this Court, and any doubts arising from the record must be resolved in the defendant's favor. If anything, the facts in this case are more compelling than in Hunter. In Hunter, it was a common area, a vestibule, and a stairway where these items were found, and there was a co-defendant in that case. Here, the state is at the defendant's home with a search warrant for a gun based on a confidential informant's statement that the defendant had a gun. They're also in the search warrant looking for evidence that this is the defendant's residence, aren't they? Because there's maybe some concern that it's not necessarily his house? They're looking for a bill or something that would indicate. I'm not certain about that, but the confidential informant said the defendant has a gun in his home. The lack of due diligence here is what is the important factor in this case. The fingerprints were lifted within six days of the search of the, when the search warrant was executed on November 25th. The state sat on that fingerprint for nine months before they asked for an analysis to be done. Then, once the analysis was started, it was within a month they had the analysis done and the report. The only reason the state is here on a compulsory joinder speedy trial dismissal is because the state dropped the ball on getting the evidence that they needed. If they had gotten the print, if they had sent it off at the same time that they sent off the cannabis for testing, they would not have faced the speedy trial dismissal. In fact, they can do a field test for the presence of cannabis and then get the actual weight and make sure it is cannabis. I asked earlier if they took this fingerprint off and they have the print and they have his prints on file. I know there isn't a field test for this, but I have done it myself. I've been able to look at a print and look at a print and say, these two look pretty close. I know this record probably doesn't say why they didn't do that, but could they still arrest him? Could they issue a warrant for his arrest based upon that eyeball and then perfect a pending trial? Absolutely, Your Honor. Also, there is such a concept as joint possession. The state does prosecute more than one person for possession of offenses of contraband. Also, for the state to say that a misdemeanor arrest, that they would pursue that and not pursue a felony, well, that's their choice. But it's not really in their interest to, under Hunter, wait 200 days and sit on a print on the evidence on the gun, which is the whole reason they were at this house in the first place, to get Class X charges. They waited and sat on the evidence. And it's not in their interest to have done that. It's clear that it wasn't a conscious choice on their part. But the state is the state.  Now, turning to their, the state tries to distinguish Hunter by arguing that the defendant had actual possession of the cannabis, but only constructive possession of the gun, and therefore that somehow distinguishes it. The court and Hunter, at paragraphs 17 and 19, they talk about possession crimes. They talk about constructive possession, which is what the defendant had here. It's identical circumstances. But they also just talk about possession offenses and how a possession offense is possession of multiple items in a single container. The defendant's home is a single act for purposes of compulsory joinder. But also, I'd like to point out that, and I argued this in my brief, ownership is different than possession. Ownership by itself does not establish immediate and exclusive control over the item, which is required for actual possession. I have actual possession of this pen, but I don't own it. The state does. I have ownership of a pen in my house, but I don't have immediate and exclusive control over it. My ownership, my statement of ownership doesn't convert constructive possession to actual possession. And it's not necessary for the state to make that kind of mental gymnastics to prosecute someone for possession, because they can do it as whether you have actual or constructive possession. The only reason they're trying to shoehorn the constructive possession into actual possession is because they're trying to distinguish Hunter. For compulsory joinder dismissal. And it just, the analysis doesn't work. Even if this distinction was critical, the record doesn't establish that, the necessary facts to be able to draw this distinction. Because the Supreme Court in Hunter, at paragraph 19, said a possession crime is committed at the time of the offender's arrest. Therefore, for the defendant's possession to be actual, he would have had to have made the statement contemporaneous with his possession. Well, the search warrant was executed at 830. He was interviewed nearly two hours later and made the statement to the investigators that cannabis is mine. Well, by that time, he did not have immediate and exclusive control of any of the contraband that had been seized in his home. So the ownership itself, the statement of ownership, cannot retroactively change the constructive possession to actual possession. Now, the Supreme Court in Hunter rejected the absurd and unjust consequences of the state's actions in that case. This case is more compelling than Hunter, and it's certainly controlled by it. And we ask that Your Honors affirm the dismissal order entered by Judge Ackerman below. Are there any questions? Thank you. Thank you. Ms. Price. I have two very short points on rebuttal. The first one is the defendant's argument that the completeness of the record belongs to the epilogue. That's absolutely true. However, when I was talking about what was available on this record, it wasn't about hearings being missing or any documents being missing. It's what was actually developed below in a fairly long series of motions to dismiss, none of which had an evidentiary hearing. And so that was the nature of our discussion on the record. As far as we know, the record is complete except for, I believe, the one document that I dropped the footnote on because we had not been able to get it. As far as counsel's argument on ownership versus possession, I have to admit that I'm really baffled. And, again, I'm baffled by Hunter. I'm baffled by the entire body of law. It makes no sense to me. I'm tone deaf. But counsel's argument was, I think, somewhat hyper-technical. And the reason I use that word is that going back to Williams and this whole group of cases, they're saying that the state's positions in all of these create hyper-technical analysis that is not workable. And that's why we're going to say possession is possession is possession, and it's all at this one time. I think possession is possession is possession is factually and logically untrue, but the court's accepted. But to then draw distinctions on what's ownership and what's possession and at what moment in time we're looking at seems to be specifically what the court is saying it doesn't want to see. And so I think that I found counsel's distinction between ownership and possession somewhat baffling. I think when a defendant says it's his, then it's his. I think that I can trust the defendant if he says it's his. Well, unless he's protecting someone else by saying it's his. I mean, there are exceptions. You know, and that's true. Not likely in this case, but it could have happened. In this case, I would have to say once again, as I've said 18 times, the record would not give us any information on that. I'm sorry that we are here in a situation where it was litigated ad seriatim, but with many holes despite the ongoing litigation. Despite that, I respectfully ask this court to reverse the judgment because we believe that when you have multiple people in a room, the closed container analysis simply fails. And we believe that despite this court's questions, which are certainly legitimate and show legitimate concerns, we don't believe that there was, in fact, sufficient evidence to charge the defendant with a weapons charge until the lab report came back. And in saying that, I admit that I cannot explain what the 10-month gap is based on. But despite that, we did not have the evidence until that report came back. Thank you. Let's talk a little philosophy again. And maybe it's not going to be based upon this record, but you said you don't understand Hunter. Maybe if you look at Hunter and some of the other cases that have been coming forward, delay is an issue. And having a, you know, maybe the Supreme Court has decided that it's time to get a bit more organized because of some of the problems we've had in the past. Why couldn't that be a motivator in Hunter? Even though they went around the block to get there, but why couldn't it? And I think it's likely that that's part of what they're looking at. I think the problem that I have, and it's, you know, and again, it's that you read these cases and you don't have a lot of factual background. You read Williams, and I'm very disturbed by the bottom line of Williams. However, one has to wonder when he was a person who was abetting a bunch of teenagers to kill somebody, why he wasn't charged with the murder up front. My sense, and nowhere in the record does it say this, this is just my own speculation, or nowhere in the case does it say it. My own speculation is they didn't charge him up front because they thought that he was going to be helpful in the investigation, and he turned out not to be. Again, that's entirely based on speculation on my part. I don't think when you have a situation where a particular defendant or a particular accused perhaps knows what's going to be arrayed against him, has had discovery, understands the evidence, why we are concerned that he's going to be surprised. My sense in Williams is they took away his, yippee, I got away with murder. And again, I admit that I'm tone deaf. I'm perhaps the worst person to be standing here on this. But where you're looking at a situation where a defendant, and here in this case specifically, the defendant knew what was found, and so he should not have been surprised if within the statute of limitations he was charged with something else. He was an extremely sophisticated defendant, and so during the course of this litigation, whether he had counsel or whether he was pro se, he consistently made this motion, and this is where he wanted to go. I guess that part of what bothers me is I see a significant amount of societal harm, and especially in a case like Williams where you lose a murder, and here where you lose a weapons charge in somebody with prior felonies. I think there's a significant level of societal harm in losing the possible prosecutions, where there's to me minimal prejudice to the defendant if he gets charged for something after a speedy trial term is run on a different offense. And then you're raising your eyebrows, and I'm an eyebrow raiser, too. And again, I admit that I'm tone deaf. You're tone deaf. I should never play poker. I am. Yeah. I know the answer to this because I've made observations about people eye rolling, and I'm a big eye roller, too. But I think that nowhere in these situations is the societal cost being considered. I think, you know, you look at Hunter and Williams, they're clearly not considering societal cost. There is a belief reflected in these cases, and it goes back even to the original Williams, you know, the older one. There's a belief referenced in these cases that prosecutors are going to sit around and force somebody to go to trial, and I think in Hunter, the circuit court asks the prosecutor, so I get a brand-new charge every 160 days. You know, my sense of this is these are based on mistakes. Maybe I'm naive, but I can't imagine who's got the time to sit there and say, oh, every 160 days we'll go to a new trial. That seems sort of, in the real world, unlikely to me. I agree. There are a lot of societal issues raised in these cases, but since we do what we do and they do what they do, we have to abide sometimes. Yeah. And we're all good soldiers. We all abide. Thank you, Your Honors. We appreciate the argument. We will take this under advisement. We will issue a decision in due course, and we will stand adjourned. Thank you. Thank you.